**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE AMERICAN DENTAL PARTNERS, INC. SECURITIES LITIGATION | No. 08-cv-10119-RGS (Consolidated Action) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY CLASS CERTIFICATION, PRELIMINARY**
**APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF FORM**
**AND MANNER OF NOTICE, AND SETTING OF FINAL FAIRNESS HEARING**

GRANT & EISENHOFER P.A.
Stuart M. Grant (BBO # 549471)
Megan D. McIntyre (*pro hac vice*)
Hung G. Ta (*pro hac vice*)
1201 North Market Street
Wilmington, DE 19801

*Counsel for Lead Plaintiff Operating*
*Engineers Construction Industry and*
*Miscellaneous Pension Fund and Class*
*Counsel for the Class*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................... ii

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF FACTS ........................................................................... 2

        A.      Lead Plaintiff's Claims ..................................................................... 2

        B.      The Action ........................................................................................ 4

        C.      Mediation and the Proposed Settlement .......................................... 5

I.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
        SETTLEMENT BECAUSE IT IS WITHIN THE RANGE OF VALUE
        WARRANTING APPROVAL ...................................................................... 6

II.     THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS ........... 9

        A.      The Prerequisites Of Rule 23(a) Are Satisfied ............................... 10

                1.      The Settlement Class Is Sufficiently Numerous ................... 10

                2.      There Are Common Questions Of Law And Fact ................. 11

                3.      The Class Representatives' Claims Are Typical Of Those Of The
                        Settlement Class ................................................................... 12

                4.      Lead Plaintiff And Class Counsel Will Fairly And Adequately Protect The
                        Interest Of The Class ........................................................... 13

        B.      The Class's Claims Satisfy The Prerequisites Of Rule 23(b)(3) ................. 14

                1.      Common Legal And Factual Questions Predominate........................... 14

                2.      A Class Action Is Superior To Other Methods Of Adjudication......................... 15

III.    THE FORM AND CONTENT OF THE PROPOSED NOTICE TO THE
        CLASS ARE SUFFICIENT ....................................................................... 16

CONCLUSION.................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Abelson v. Strong,*
  MDL No. 584, Civ. A. No. 85-0592-S, 1987 WL 15872 (D. Mass. July 30, 1987) ..............13

*Adams v. Amplidyne, Inc.,*
  No. 99-cv-4468, 2001 WL 34885324 (D.N.J. Aug. 15, 2001) ................................................18

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)....................................................................................................................15

*City P'ship Co. v. Atlantic Acquisition L.P.,*
  100 F.3d 1041 (1st Cir. 1996)......................................................................................................8

*In re Community Bank of Northern Va.,*
  418 F.3d 277 (3d Cir. 2005)........................................................................................................10

*Durett v. Housing Authority of City of Providence,*
  896 F.2d 600 (1st Cir. 1990)........................................................................................................16

*Fidel v. Farley,*
  534 F.3d 508 (6th Cir. 2008) ......................................................................................................18

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,*
  55 F.3d 768 (3rd Cir. 1995) ..........................................................................................................6

*In re Gilat Satellite Networks, Ltd.,*
  2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007) ........................................................7

*Hawkins v. Commissioner of N.H. Dept. of Health and Human Services,*
  2004 U.S. Dist. LEXIS 807 (D.N.H. Jan. 23, 2004)..................................................................9

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.,*
  723 F.2d 169 (1st Cir. 1983)........................................................................................................6

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26, 2003).........................................................8

*Kinney v. Metro Global Media, Inc.,*
  No. Civ. A. 99-579 ML, 2002 WL 31015604 (D.R.I. Aug. 22, 2002) ....................................11

*Kirby v. Cullinet Software, Inc.,*
  116 F.R.D. 303 (D. Mass. 1987).................................................................................................12

*In re Livent, Inc. Noteholders Sec. Litig.,*
  210 F.R.D. 512 (S.D.N.Y. 2002) ...............................................................................................14

*In re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005)......................................................................6

*In re Lupron Mktg. & Sales Practices Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004) ........................................................7

*Priest v. Zayre Corp.*,
    118 F.R.D. 552 (D. Mass. 1988)................................................................13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997)....................................................................17

*Randle v. Spectran*,
    129 F.R.D. 386 (D. Mass. 1988)................................................................15

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)....................................................................7

*Rolland v. Celluci*,
    191 F.R.D. 3 (D. Mass. 2000)......................................................................8

*Swack v. Credit Suisse First Boston*,
    230 F.R.D. 250 (D. Mass. 2005)........................................................7, 13, 16

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
    No. Civ.A.03-10165-RWZ, 2005 WL 3178162 (D. Mass. Nov. 28, 2005) ................... *passim*

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)...........................18

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985)..............................................................6

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ...............................................................18

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ....................................................................................18

**OTHER AUTHORITIES**

9(b) of the Federal Rules of Civil Procedure ........................................................4

12(b) of the Federal Rules of Civil Procedure .......................................................4

23(a) of the Federal Rules of Civil Procedure ............................................... *passim*

23(b) of the Federal Rules of Civil Procedure ............................................10, 14, 15

23(c)(2)(B) of the Federal Rules of Civil Procedure ...............................................16, 17

23(e)(1) of the Federal Rules of Civil Procedure...........................................................16

Manual For Complex Litigation, Fourth § 13.14 ....................................................7

Newberg On Class Actions, 2 Newberg & Conte § 11.41.......................................6

## I.    <u>INTRODUCTION</u>

Lead Plaintiff, Operating Engineers Construction Industry and Miscellaneous Pension Fund, on behalf of the Class (as defined herein), and through Class Counsel, Grant & Eisenhofer P.A., submits this application for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Action") with defendants American Dental Partners, Inc. ("ADPI"), Gregory A. Serrao ("Serrao"), Breht T. Feigh ("Feigh") and Mark W. Vargo ("Vargo") (collectively, the "Defendants," and together with Lead Plaintiff, the "Settling Parties"). The terms of the Settlement are set forth in the Class Action Settlement Agreement dated as of December 15, 2009 ("Settlement Agreement") which is being filed concurrently with this motion.[1] Under the Settlement, Defendants will cause their directors' and officers' liability insurance carrier to pay $6,000,000 (six million dollars) in cash to the Class, in return for complete and unconditional releases and discharges from all of the Released Claims, as defined in the Settlement Agreement.

Lead Plaintiff respectfully submits that preliminary approval of the Settlement is appropriate. The Settlement was reached after a mediation in September 2009, conducted by the Honorable Nicholas Politan, and represents the product of good faith, arm's-length negotiations among experienced securities counsel for the Settling Parties. In entering into the Settlement, the Settling Parties are fully conversant with the strengths and weaknesses of this Action, having briefed a motion by Defendants to dismiss the claims asserted by Lead Plaintiff, and having embarked on discovery. Being thus well-positioned to evaluate the risks of continued litigation versus the fairness and prudence of a resolution at this time, each of the Settling Parties believes the Settlement produces a fair and reasonable result. For these reasons, which are set forth more

---

[1]    Unless otherwise specified, defined terms used in this memorandum of law shall have the same meaning as ascribed to the terms in the Settlement Agreement.

fully below, the Settlement meets the test for preliminary approval in that it is fair, reasonable and adequate.

Accordingly, Lead Plaintiff requests that the Court enter an order, in the form of the accompanying proposed Order of Preliminary Approval: (1) preliminarily certifying the Class; (2) granting preliminary approval of the proposed Settlement; (3) approving the Settling Parties' proposed form and method of giving notice to the Class of the pendency of this litigation and of the Settlement; (4) directing that notice be given to the putative Class members as approved by the Court; and (5) scheduling a fairness hearing during which the Court will consider (a) the Settling Parties' request for final approval of the Settlement, the Plan of Allocation, and entry of the proposed Final Order and Judgment, (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, and (c) dismissal of the Action pending before this Court.  Defendants consent to this motion.

## II.     STATEMENT OF FACTS

### A.     Lead Plaintiff's Claims

This is a securities fraud class action brought by Lead Plaintiff on behalf of a class (the "Class") consisting of all persons who purchased or acquired stock of ADPI during the period from February 25, 2004 to December 13, 2007 (the "Class Period").  Lead Plaintiff asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against defendants ADPI, Serrao (at all relevant times the Chairman, President and Chief Executive Officer of ADPI), Feigh (at all relevant times the Executive Vice President, Chief Financial Officer and Treasurer of ADPI), and Vargo (at all relevant times the Vice President and Chief Accounting Officer of ADPI).

As alleged in Lead Plaintiff's Consolidated Class Action Complaint dated September 29, 2008 (the "Complaint"), ADPI was founded in 1995 as a "management service organization," a

company that affiliates with and provides management and administrative support services to dental practices. In 1996, PDHC, Ltd. ("PDHC"), a wholly-owned subsidiary of ADPI, entered into an affiliation agreement (the "Service Agreement") with PDG, P.A. ("PDG"), a professional association of dentists who practiced dentistry in the Minneapolis-St. Paul region of Minnesota under the business name "Park Dental."

Lead Plaintiff alleges that, commencing in 2002, ADPI and its subsidiary PDHC began engaging in conduct that violated the Service Agreement with PDG. The alleged purpose of this conduct was to allow ADPI to extract, and report to investors, increased revenue and earnings from the Service Agreement. Lead Plaintiff alleges that ADPI was able to divert to itself significant sums of money that should have been paid to PDG under the Service Agreement, as well as implement various impermissible cost-cutting measures in violation of the Service Agreement, thereby painting a picture of profitability that was false. In ADPI's SEC filings and various other public statements, Defendants allegedly attributed (falsely) ADPI's newly improved financial performance to the success of its business and other reasons.

PDG eventually commenced a lawsuit in February 2006 (initially against PDHC, and later also against ADPI) in Minnesota state court (the "PDG Lawsuit"), arising from the various violations described above. In response to this lawsuit, Defendants are alleged to have issued further misleading statements in ADPI's SEC filings, press releases and during conference calls, that PDG's claims were "without merit" and "baseless," and that ADPI had always conducted its business towards PDG in the same way. Lead Plaintiff alleges that Defendants made these misstatements despite knowing that ADPI had indeed violated the terms of the Service Agreement and that ADPI faced significant liability with respect to PDG's claims.

Lead Plaintiff further alleges that, in March 2007, when PDG gave notice of its intention to terminate the Service Agreement, Defendants misled ADPI's investors by assuring the public markets that ADPI would be able to replace the PDG dentists with new dentists and that ADPI would continue to operate the Park Dental clinics without PDG. The Complaint alleges that Defendants in fact knew ADPI had no workable solution, and that ADPI's only plan involved improper conduct that subjected ADPI to even greater legal liability.

### B.     The Action

In March 2008, a number of putative securities class action lawsuits were filed against ADPI. By order dated May 29, 2008, this Court consolidated those actions into the present Action, appointed Lead Plaintiff to serve as lead plaintiff for the putative class under the Private Securities Litigation Reform Act, and appointed Lead Plaintiff's counsel, the law firm of Grant & Eisenhofer P.A., to serve as Lead Counsel for the putative class.

On September 29, 2008, after an extensive investigation that included review of testimony and evidence from the PDG Lawsuit, Lead Plaintiff filed the Complaint. The Complaint asserts a claim under Section 10(b) of the Exchange Act against all Defendants, and a claim under Section 20(a) of the Exchange Act alleging control person liability against Defendants Serrao, Feigh and Vargo.

On December 5, 2008, Defendants moved to dismiss the Complaint under Rules 9(b) and 12(b) of the Federal Rules of Civil Procedure, contending that the Complaint failed to state a claim and failed to allege fraud with particularity. After full briefing and oral argument, the Court denied Defendants' motion to dismiss in its entirety.

On April 22, 2009, the parties submitted to the Court a Joint Statement Pursuant to Local Rule 16.1(d). In the Joint Statement, the parties informed the Court that they were unable to reach agreement on a joint discovery plan because Defendants sought to bifurcate discovery with

4

respect to class certification issues and discovery on the merits. The Court scheduled a status conference for June 5, 2009, at which it denied Defendants' request to bifurcate discovery. The parties thereafter commenced exchanging discovery and serving subpoenas seeking relevant documents from third parties.

### C.    Mediation and the Proposed Settlement

On  September 22, 2009, during the course of discovery, the Settling Parties conducted a mediation in an effort to resolve the Action. The Honorable Nicholas Politan served as the mediator. While the mediation session itself did not produce a settlement agreement, the parties kept the lines of communication open and, with Judge Politan's able assistance, were able to come to an agreement-in-principle on a settlement. The terms of that settlement have been formalized in the Settlement Agreement.

Under the Settlement, Defendants' insurance carrier shall pay $6,000,000 to the Class, in consideration for the Class providing the Defendants with a complete and unconditional release and discharge from the Released Claims (as defined in the Settlement Agreement). The $6,000,000 shall be deposited into an escrow account for the benefit of the Class no later than thirty days after entry of an order preliminarily approving the settlement. The Settlement Agreement provides that, at or before the final approval hearing, Class Counsel will propose to the Court a Plan of Allocation which shall provide for the manner of allocation of the Settlement Fund amongst all Authorized Claimants (terms as defined in the Settlement Agreement).

The Settlement Agreement and its supporting papers provide for the form and manner of class notice, the proof of claim procedures, the procedures for seeking exclusion from the Class or objecting to any terms of the Settlement, and the procedure by which Class Counsel shall apply for attorneys' fees and reimbursement of expenses incurred by Class Counsel in

prosecuting this Action. Final approval of the Settlement would result in the dismissal with prejudice of the Action in its entirety, against all Defendants.

<u>ARGUMENT</u>

**I.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT BECAUSE IT IS WITHIN THE RANGE OF VALUE WARRANTING APPROVAL**

Public policy in the First Circuit highly favors settlement as a means of resolving disputes. *See Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 (1st Cir. 1983) (settlement agreements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits"); *United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000). This is especially so in the context of complex class action litigation. *See, e.g., In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements"); *see also In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985) ("There is little doubt that the law favors settlements, particularly of class action suits") (citations omitted). By favoring the settlement of complex class action litigation, the law seeks to minimize the litigation expense on both sides, and to reduce the strain on judicial resources. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3rd Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *see also* NEWBERG ON CLASS ACTIONS, 2 Newberg & Conte § 11.41.

In order to approve a proposed class action settlement, a court generally follows two steps:

> [T]he judge is required to scrutinize the proposed settlement to ensure that it is fair to the persons whose interests the court is to protect. Those affected may be entitled to notice and an opportunity to be heard. This usually involves a two-

> stage procedure.  First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing.

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005) (quoting MANUAL FOR COMPLEX LITIGATION, Fourth ("MCL") § 13.14); s*ee also In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135 (D. Mass. 2004).  At the preliminary approval stage of this two-step process, the Court is not required to undertake an in-depth consideration of the relevant factors for final approval.  Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."  MCL § 21.632.  If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing.  *In re Gilat Satellite Networks, Ltd.,* 2007 U.S. Dist. LEXIS 29062 at *31 (E.D.N.Y. Apr. 19, 2007) ("Preliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval") (citing MCL § 30.41; *In re Med. X-Ray Film Antitrust Litig.*, 1997 U.S. Dist. LEXIS 21936 at *6 (E.D.N.Y. Dec. 10, 1997)).

Applying the approach set forth above, the Court should preliminarily approve the Settlement because it is sufficiently fair, reasonable and adequate and thus falls squarely within the range of possible approval.

*First*, the Settlement amount of $6,000,000 represents a fair and reasonable result after more than a year of litigation.  During this time, each side vigorously advocated its position, as described in the Statement of Facts above.  The Settlement amount of $6,000,000 reflects, among

other things, the evidence developed against Defendants and, at the same time, recognizes the inherent risks, costs and potential for delay associated with a complex securities litigation, including the meaningful possibility that Defendants would be unable to pay a substantial judgment if Lead Plaintiff were to prevail in the litigation.

*Second*, as set forth above, the proposed Settlement is the result of intensive arm's-length negotiation between the Settling Parties, arrived at after a mediation before a respected former judge with significant experience mediating complex class actions, including actions asserting securities claims. These factors – the time and effort spent on the settlement negotiations, and the presence of a highly-regarded mediator – all militate in favor of preliminary approval of the settlement because they strongly indicate that there was no collusion in the result that was achieved. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090 at *13 (S.D.N.Y. Sept. 26, 2003) ("[T]he fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable") (citing *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (internal quotation marks and citation omitted)).

*Third*, the Settling Parties agreed to the terms of the Settlement after conducting several months of discovery. There is a presumption in favor of a proposed settlement when the parties have conducted sufficient discovery to allow them to investigate the pertinent factual and legal issues and to assess the merits of their respective cases. *City P'ship Co. v. Atlantic Acquisition L.P.*, 100 F.3d 1041 (1st Cir. 1996); *Rolland v. Celluci*, 191 F.R.D. 3, 6 (D. Mass. 2000). In this

case, Lead Plaintiff's attorneys researched the claims against Defendants for many months prior to the filing of the Complaint, including reviewing the court record in the underlying PDG Lawsuit. After Defendants' motion to dismiss was denied by this Court, the parties exchanged written initial disclosures, propounded and responded to various requests for documents and interrogatories, and served subpoenas on various third parties seeking additional relevant documents. As a result of all of these efforts, Lead Plaintiff was able to develop the facts concerning Defendants' potential liability, and the Settling Parties and their counsel are capable of making well-informed decisions regarding the Settlement.

*Fourth*, the Settling Parties are represented by counsel experienced in securities class action litigation. Lead Plaintiff's counsel has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. Counsel for Defendants similarly has extensive expertise from a long track record in securities class actions and has vigorously defended Defendants throughout the course of the litigation.

For all of these reasons, Lead Plaintiff respectfully requests that the Court preliminarily approve the Settlement. *See Hawkins v. Commissioner of N.H. Dept. of Health and Human Services*, 2004 U.S. Dist. LEXIS 807, at *15 (D.N.H. Jan. 23, 2004) ("A presumption in favor of the proposed settlement arises when sufficient discovery has been provided, counsel have experience in similar cases, and the parties have bargained at arms-length").

## II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS

The proposed Class consists of all persons and entities that purchased or otherwise acquired ADPI's publicly traded common stock during the Class Period from February 25, 2004 through and including December 13, 2007. The Class excludes: the Defendants; each of ADPI's officers, directors, subsidiaries and affiliates during the Class Period; members of the Defendants' immediate families and their legal representatives, heirs, successors and assigns;

any entity in which any of the foregoing have or had a controlling interest; and the directors and officers liability insurance carriers (and any affiliates or subsidiaries thereof) of ADPI. Also excluded from the Class are any putative Class members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the notice to be provided to the Class.

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Community Bank of Northern Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("'all Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes' as a means to facilitate the settlement of complex nationwide class actions") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997)). Like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23 are met. *Id.* Specifically, a class action must meet each of the four requirements set forth in Rule 23(a), and at least one of three requirements set forth in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Class certification is appropriate here because the Action easily meets the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The Prerequisites Of Rule 23(a) Are Satisfied

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### 1.    The Settlement Class Is Sufficiently Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable. While the exact number of Class members

is unknown, ADPI's 2007 Form 10-K filed on March 10, 2008 discloses that the weighted average number of shares of common stock outstanding during 2004 (the first year of the Class Period) was approximately 11.37 million and that the weighted average number of shares of common stock outstanding during 2007 (the last year of the Class Period) was 12.68 million. During the Class Period, the average daily trading volume for ADPI's common stock was approximately 86,000 shares.[2]  Based on the foregoing, it is reasonable to presume that the Class consists of thousands of geographically dispersed members, and thus the joinder of all members would be impracticable.  *See In re Transkaryotic Therapies, Inc. Sec. Litig.*, No. Civ.A.03-10165-RWZ, 2005 WL 3178162, at *2 (D. Mass. Nov. 28, 2005) ("Other measures may be used to approximate class size.  For example, 'how many shares of stock were outstanding' and 'the average daily trading volume during the Class Period [are] both factors commonly considered by courts when finding the numerosity prong satisfied despite the absence of specific information about the number of individuals who purchased the stock during the relevant period.'") (citations omitted); *Kinney v. Metro Global Media, Inc*., No. Civ. A. 99-579 ML, 2002 WL 31015604, at *4 (D.R.I. Aug. 22, 2002) (rejecting defendants' contention that numerosity element was not satisfied and noting that, "[b]y sheer virtue of the fact that Metro Global stock was traded over the Nasdaq small cap market during the class period (over three years), and that during that time thousands, if not millions, of the shares were traded, common sense dictates that the proposed class is very large.").  Accordingly, the Class is sufficiently numerous to satisfy Rule 23(a)(1).

### 2.    There Are Common Questions Of Law And Fact

Federal securities cases like this one easily meet the commonality requirement of Rule 23(a)(2), because the claims of all Class members arise from the same course of conduct by the

---

[2]      This calculation was derived from publicly available information concerning the daily trading in ADPI's common stock.

Defendants and involve the same legal theories. Rule 23(a)(2) only requires "that questions of law or fact be shared by the prospective class, but does not require that every question be common." *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987) (concluding that plaintiffs' securities fraud claims raised common questions, and granting motion for class certification). Further, "'[t]he threshold of commonality is not a difficult one to meet,' especially when 'there are a number of common issues of fact and law that the class members would be required to establish to prove the defendants' liability, as well as their entitlement to damages.'" *In re Transkaryotic Therapies, Inc.*, 2005 WL 3178162, at *2.

Here, Lead Plaintiff's claims against the Defendants present many questions of law and fact which are common to all members of the Class, including:

- Whether the Defendants participated in and pursued the course of conduct described in the Complaint;

- Whether the Defendants' alleged misrepresentations and omissions were material;

- Whether the Defendants' conduct violated Sections 10(b) and/or 20(a) of the Exchange Act;

- To what extent the Class members have sustained damages that were caused by the Defendants' violations of the securities laws; and

- The proper measure of the damages sustained by members of the Class.

Thus, the Rule 23(a)(2) commonality requirement is satisfied.

### 3.    The Class Representatives' Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "In general, 'a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the

claims of other class members, and if his or her claims are based on the same legal theory.'" *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *3 (citation omitted). However, "[a]s with the commonality requirement, the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005). *See also Abelson v. Strong,* MDL No. 584, Civ. A. No. 85-0592-S, 1987 WL 15872, at *2 (D. Mass. July 30, 1987) ("'When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met.' Seen in this light, the burden on plaintiffs in proving typicality is not 'very substantial'") (citations omitted); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("'With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members.' 'The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs.'") (citations omitted).

Here, the injuries to Lead Plaintiff and the members of the Class are attributable to the same alleged course of conduct by the Defendants, and liability for this conduct is predicated on the same legal theories. As such, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Lead Plaintiff And Class Counsel Will Fairly And Adequately Protect The Interest Of The Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the plaintiffs' counsel are qualified, experienced, and generally able to conduct the litigation; and (2) whether the class representative has interests

antagonistic to those of the class. *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *4.

Here, Class Counsel has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States, and is qualified and able to conduct this litigation – as they have demonstrated in drafting the Complaint, defeating the Defendants' motion to dismiss, and negotiating the Settlement. Moreover, Lead Plaintiff and the Class share the common goal of maximizing recovery, and there is no conflict between them. Rule 23(a)(4) is therefore satisfied.

**B.    The Class's Claims Satisfy The Prerequisites Of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are easily met in this case.

**1.    Common Legal And Factual Questions Predominate**

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (common issues predominate where "each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct [and] the only individualized question concerns the amount of damages"); *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *2 ("where . . . common questions predominate regarding liability, then courts generally find the predominance

requirement to be satisfied even if individual damages issues remain.") (citation omitted). The Rule 23(b)(3) test of predominance is "readily met" in securities fraud cases. *Amchem Prods.*, 521 U.S. at 625; *see also Randle v. Spectran*, 129 F.R.D. 386, 393 (D. Mass. 1988) (holding that "common questions with respect to the existence and materiality of misleading statements or omissions in documents or press releases concerning [corporation's] securities, along with the related questions of defendants' liability for such alleged statements or omissions, predominate over any individual questions in this action.").

Here, all the Class members' claims against Defendants are based on the same alleged course of conduct by the Defendants. There are numerous common issues relating to the Defendants' liability which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

### 2.    A Class Action Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Considering these factors, this class action is clearly "superior to other available methods for the fair and efficient adjudication" of the claims of the vast number of purchasers of ADPI stock. Lead Plaintiff is unaware of any other litigation already commenced by individual Class members, which is not surprising given the tremendous costs associated with such litigation. Indeed, courts in this Circuit have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual

plaintiffs.  *Swack*, 230 F.R.D. at 273 ("the piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues--*i.e.,* the Defendants' allegedly illegal conduct and the impact thereof on the market price of Razorfish stock--would be an inefficient allocation of limited court resources.")  As one court has held, absent the class action device "the very real risk [is] that potential class members with relatively small claims would not have the financial incentives or wherewithal to seek legal redress for their injuries."  *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *2.

The scope and complexity of Lead Plaintiff's claims against Defendants, together with the massive cost of individualized litigation, make it unlikely that the vast majority of the Class members would be able to seek relief without class certification.  Moreover, it is clearly desirable to concentrate the claims of all Class members in this forum, and Lead Plaintiff does not foresee any difficulties in the management and settlement of this action as a class action. Accordingly, the requirements of Rule 23(b)(3) are satisfied, and the Court should preliminarily certify this action as a class action on behalf of the proposed Class.

## III.    THE FORM AND CONTENT OF THE PROPOSED NOTICE TO THE CLASS ARE SUFFICIENT

In order to afford class members the opportunity to object to a proposed class-wide settlement, reasonable notice must be provided to those class members.  *Durett v. Housing Authority of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).  Where a proposed settlement is coupled with a request for class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure, class notice must meet the requirements of both Rules 23(c)(2) and 23(e).

In terms of the form and manner of providing notice, Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." while Rule 23(c)(2)(B) requires the notice to be the "best notice that is practicable

under the circumstances, including individual notice to all members who can be identified through reasonable effort." "Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members," and "[f]or those whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the due process clause." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 232 (D.N.J. 1997); *see also id.* at 231 ("due process does not require actual notice, but rather a good faith effort to provide actual notice").

The content of a class notice in a securities class action is governed by Rule 23(c)(2)(B) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 23(c)(2)(B) requires that the notice:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The PSLRA requires disclosure of the following additional information:

- The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;

- If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged, a statement from each settling party concerning the issue or issues on which the parties disagree;

- A statement indicating which parties or counsel intend to apply for an award of fees or costs from the settlement fund, as well as the amount to be requested (including on an average per share basis) and a brief explanation supporting the fees and costs sought;

- The name and contact information of representatives of plaintiffs' counsel who will be reasonably available to answer class members' questions; and

- The reasons for the settlement.

*See* 15 U.S.C. § 78u-4(a)(7).

In the present case, both the form and the content of the proposed notice to the Class are sufficient and should be approved by the Court.

*First*, Lead Plaintiff has submitted two forms of notice to the Court for approval: a long-form Notice ("Notice") and a Summary Publication Notice ("Publication Notice"), attached as Exhibits 1 and 3, respectively, to the proposed Order of Preliminary Approval. Lead Plaintiff has agreed to publish the Publication Notice in *Investor's Business Daily*; to send the Notice by first-class mail to those members of the Class whose addresses can be identified through reasonable effort; and to post the Notice on Class Counsel's and the claims administrator's websites. These are all well-established means of providing legally sufficient notice in securities class actions. *See, e.g., Fidel v. Farley*, 534 F.3d 508, 514-15 (6th Cir. 2008) (notice program "comported with the requirements of both due process and Rule 23(c)(2)(B)" where notice was mailed to brokerage houses and summary notice was published in *Investor's Business Daily* and on the internet); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008) (same); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 613 (S.D. Cal. 2008) (notice program was adequate where it involved mailing to stockholders who could be identified with reasonable effort, plus publication of a summary notice in *Investor's Business Daily*); *Adams v. Amplidyne, Inc.*, No. 99-cv-4468, 2001 WL 34885324, at **1-2 (D.N.J. Aug. 15, 2001) (same).

*Second*, the Notice provides detailed descriptions of the action, the Settlement, the Class, and the options available to potential Class members, including the right to object or opt out. *See* Exhibit 1 to the proposed Order of Preliminary Approval. The Publication Notice provides similar information in a summary form, and informs the reader how to obtain a copy of the more

18

detailed Notice.  *See* Exhibit 3 to the proposed Order of Preliminary Approval.  With respect to the PSLRA's requirements, the Notice: (1) states the aggregate and per share amounts that are estimated to be distributed to the Class; (2) describes the parties' areas of disagreement with respect to the Class's recoverable damages; (3) states that Class Counsel will request attorneys' fees and reimbursement of litigation expenses and the basis for the request; (4) identifies representatives of Class Counsel who can be contacted for additional information; and (5) explains the reasons for the Settlement.

Accordingly, Lead Plaintiff respectfully requests that this Court approve the form and content of the proposed Notice and Publication Notice.

## <u>CONCLUSION</u>

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter an order in the form of the proposed Order of Preliminary Approval accompanying this motion: (1) preliminarily approving the proposed settlement as within the range of possible fairness, reasonableness and adequacy; (2) preliminarily certifying the Class for purposes of the Settlement; (3) approving the form and manner of the proposed Summary Notice and Notice; and (4) setting a date and time for the hearing regarding final approval of the Settlement, Plan of Allocation, and Class Counsel's application for attorneys' fees.

Dated: December 15, 2009                    Respectfully submitted,

*/s/ Megan D. McIntyre*_____
GRANT & EISENHOFER P.A.
Stuart M. Grant (BBO # 549471)
Megan D. McIntyre (*pro hac vice*)
Hung G. Ta (*pro hac vice*)
1201 N. Market St.
Wilmington, DE 19801
Tel:  (302) 622-7000
Fax:  (302) 622-7100
*Counsel for Lead Plaintiff Operating Engineers*
*Construction Industry and Miscellaneous Pension*
*Fund, and Lead Counsel for the Class.*

20

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 15, 2009 the attached Memorandum of Law in Support of Motion For Preliminary Class Certification, Preliminary Approval Of Proposed Settlement, Approval Of Form And Manner Of Notice, And Setting Of Final Fairness Hearing was served upon the following counsel of record via CM/ECF:

Bonnie S. McGuire (BBO #651519)
Michelle L. Visser (BBO #663164)
ROPES & GRAY LLP
One International Place
Boston, MA 02110


/s/ Megan D. McIntyre
Megan D. McIntyre *(pro hac vice)*